UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M.Q.A., *et al.*, | No. 1:20-cv-1556-JLT-EPG |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR A PROTECTIVE ORDER LIMITING DISCOVERY |
| v. | |
| MONICA B. LUGO, *et al.* | |
| Defendants | (ECF No. 140). |

This matter is before the Court on Defendants' motion for a protective order limiting discovery filed on April 2, 2026. (ECF No. 140). Plaintiffs filed an opposition motion on April 16, 2026 (ECF No. 142) and Defendants filed a reply on April 30, 2026. (ECF No. 144). In the motion, Defendants ask for an order limiting discovery to the administrative record. (ECF No. 140 at 1).

For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion for a protective order.

## I.    BACKGROUND

Plaintiffs filed the initial complaint commencing this action on October 30, 2020. (ECF No. 1). This action now proceeds on Plaintiffs' Fourth Amendment Complaint, which was summarized in the Courts's Finding and Recommendations granting Plaintiffs leave to file a Fourth Amendment Complaint. Those findings and Recommendations summarized Plaintiff's Fourth Amended Complaint as follows:

In the proposed Fourth Amended Complaint, Plaintiffs[1] name the same two sets of Defendants – the USCIS Defendants and the State Department Defendants – that were named in the Third Amended Complaint. (Id. at 8–10).

In addition to reasserting the facts previously alleged in the Third Amended Complaint, the proposed Fourth Amended Complaint includes the recent events at the administrative level—i.e., the recent approval of N.M.Q.A.(1) and N.M.Q.A.(2)'s N-600K applications, the approval of Muneera's own N-600K application, the issuance of certificates of citizenship to Muneera, N.M.Q.A.(1) and N.M.Q.A(2), and the issuance of a new U.S. passport to Muneera. (Id. at 12–25). As to Alia and Ramzi's N-600K applications, Plaintiffs allege in the proposed Fourth Amended Complaint that Defendants refused to reopen Alia and Ramzi's N-600K applications on the basis that Alia and Ramzi have "aged out" and are no longer statutorily eligible for relief, which Plaintiffs assert is the result of Defendants' "delays, revocations, and other bad faith actions." (Id. at 24). Plaintiffs assert that Defendants "intentionally timed out the denial of [Alia and Ramzi's] N-600K applications in order to deprive" them of their citizenship. (Id. at 25–26). Plaintiffs further allege that "Defendants' actions amount to affirmative misconduct to delay the applications . . . until [Alia and Ramzi] aged out." (Id. at 40).

Plaintiffs further allege that Muneera filed Form I-130 Petitions for Alien Relative ("I-130 petitions") on behalf of Alia and Ramzi on June 9, 2023. (Id. at 24). After the I-130 petitions were approved, Alia and Ramzi filed I-131 Applications for Humanitarian Parole "to come to the United States while their [I-130 petitions] are processing, so they would not be separated from their family." (Id. at 25). Plaintiffs allege that counsel for Defendants notified them on May 3, 2024 that the humanitarian parole applications "were denied but did not explain the basis for the denial[,] [o]nly that the parole requirements had not been met." (Id.)

Finally, Plaintiffs allege in the proposed Fourth Amended Complaint that Defendants have a "pattern and practice of stymying family unification of Yemeni-Americans and preventing transmission of citizenship to children of Yemeni-American citizens." (Id. at 26–33). Plaintiffs assert Defendants have implemented policies and practices "targeting Yemeni-Americans and their family members," which "in effect [have] create[d] a substantially higher and different standard of proof for N-600K Petitioners of Yemeni race and/or national origin." (Id. at 33, 37).

(ECF No. 131 at 8-10).

On March 12, 2026, the Court held a scheduling conference and set a briefing scheduling regarding defendants' motion for a protective order regarding the scope of discovery. (ECF No. 138).

---

[1] Although the caption of the proposed Fourth Amended Complaint includes N.M.Q.A.(1) and N.M.Q.A.(2) as plaintiffs, the body of the proposed complaint identifies only Muneera, Alia, Ramzi, and Nassar as plaintiffs. See ECF No. 101-1 at 1–2, 8. As previously noted, Nassar, N.M.Q.A.(1), and N.M.Q.A.(2) are no longer parties in this lawsuit. See supra n.2.

Defendants filed a motion for protective order to limit discovery to the administrative record on April 2, 2026. (ECF No. 140). Defendants argue that because Plaintiffs' claims challenge administrative action, the APA limits discovery of those claims to the administrative record, regardless of if those claims are also framed as constitutional challenges. (ECF No 140 at 1).

Plaintiffs filed an opposition on April 16, 2026 (ECF No. 142).  Plaintiffs argue that limiting discovery to the administrative record would fail to address issues related to the government's intent relevant to the constitutional claims in this case. (ECF No. 142 at 1). Plaintiffs seek limited discovery of depositions of no more than three agency officials from the Department of Homeland Security and Department of State with knowledge of the practices Plaintiffs have described in the fourth amended complaint. Additionally, Plaintiffs seek emails, studies and memoranda regarding the policy and decision-making process behind said practices. (ECF No. 142 at 2).

Defendants filed a reply brief on April 30, 2026. (ECF Nos. 142, 144).

## II.    LEGAL STANDARD

Judicial review of agency action under the APA is generally limited to review of the administrative record. 5 U.S.C. 706 ("In making ... determinations, the court shall review the whole record or those parts of it cited by a party...."). "The task to the reviewing court is to apply the appropriate APA standard of review ... to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id*. (citation omitted).

The administrative record consists of the documents and materials directly or indirectly considered by the agency decision-makers. *Pinnacle Armor, Inc. v. U.S.*, 923 F. Supp. 2d 1226, 1237 (E.D. Cal. Feb. 12, 2013) (citing *Thompson v. U.S. Dept. of Labor,* 885 F.2d 551, 555 (9th Cir.1989). This rule is construed narrowly to include only those documents considered by the relevant decisionmakers. *Id.* An agency's designation of the record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity. *McCary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. July 13, 2007) (citations

omitted). In the absence of clear evidence to the contrary, courts presume that public officers have properly discharged their official duties. *Id.*

The Ninth Circuit has determined that certain circumstances may justify expanding review beyond the record or permitting discovery. *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). District courts are permitted to admit extra-record evidence in the following limited circumstances:

(1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision,"

(2) if "the agency has relied on documents not in the record,"

(3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or

(4) "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell,* 395 F.3d 1019, 1030 (9th Cir. 2005). These exceptions from the general rule "operate to identify and plug holes in the administrative record" and "are narrowly construed and applied." *Id.* Where the administrative record is sufficient to dispose of the claims, a court should deny additional discovery. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437-38 (9th Cir. 1988) (upholding district court's refusal to permit discovery and proceed to summary judgment on the administration record).

District courts have also taken differing approaches to resolving requests for discovery for constitutional claims, which one Court summarized as follows:

> In reality, district courts have struggled to coalesce around a categorical rule and instead apply a fact-specific inquiry to reach outcomes that have rejected discovery for constitutional claims in some instances and permitted discovery in others. Further, the cases cited by defendants presumed that the APA governed and did not have the benefit of controlling circuit law on the issue of whether a constitutional claim may be brought independent of the APA.
>
> There are few appellate cases discussing this issue. In Harkness v. Secretary of Navy, 858 F.3d 437, 451 & n.9 (6th Cir. 2017), the Sixth Circuit rejected an argument that discovery was necessary because constitutional issues could not be decided on the administrative record for two reasons. First, the court noted that 5 U.S.C. § 706(2)(B) permits review of constitutional claims under the APA using the administrative record. Second, the plaintiff's Establishment Clause claim was not a standalone claim because 10 U.S.C. § 14502 provided a particular mechanism to challenge constitutional error in promotion boards. Id. at 446 n.6.

Harkness does not require a different outcome than Sierra Club; both cases examined whether the plaintiff(s) could bring a standalone constitutional claim. The statutory scheme in Harkness precluded an Establishment Clause claim; the Appropriations Clause permitted a standalone challenge in Sierra Club.

Several district courts have determined that constitutional claims are governed by the APA and, therefore, constitutional claims should be decided on the administrative record without further discovery. See, e.g., Bellion Spirits, LLC v. United States, 335 F. Supp. 3d 32, 43 (D.D.C. 2018); Chiayu Chang v. U.S. Citizenship & Immigration Servs., 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (collecting cases). Those cases have noted the lack of applicable circuit law. For example, in Northern Arapaho Tribe v. Ashe, 92 F. Supp. 3d 1160, 1171 (D. Wyo. 2015), the district court noted that "[w]hether a district court must limit its constitutional review of agency action to the administrative record is [a] question that has not been definitively answered by the Tenth Circuit or the Supreme Court."

On the other hand, several courts recognize that discovery may be appropriate for a constitutional claim involving agency action. Mayor & City Council of Baltimore v. Trump, 429 F. Supp. 3d 128, 138–39, No. CV ELH-18-3636 (D. Md. Dec. 19, 2019) (collecting cases); New York v. U.S. Dep't of Commerce, 345 F. Supp. 3d 444, 451–52 (S.D.N.Y. 2018); Grill v. Quinn, No. 10-cv-0757 GEB GGH PS, 2013 WL 3146803, at *6 n.8 (E.D. Cal. June 18, 2013). As the district court in Baltimore pointed out, cases permitting discovery on constitutional claims are in accord "with the foundational tenet of constitutional adjudication that 'where constitutional rights are in issue,' courts must ensure that 'the controlling legal principles [are] applied to the actual facts of the case.' " 429 F. Supp. 3d at 138 (alteration in original) (quoting Pickering v. Bd. of Ed. of Twp. of High Sch. Dist. 205, Will Cty., 391 U.S. 563, 578 n.2, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (Douglas, J., concurring)).

The broad spectrum of opinions demonstrates a tension and broad disagreement in the reasoning and outcomes in these types of cases. This is exacerbated by the lack of controlling authority and usually results in a case-by-case approach to discovery. Most courts decline to draw a bright line or categorical rule and instead examine the particular facts of the claims involved and the discovery requested. See, e.g., Almaklani v. Trump, 444 F. Supp. 3d 425, 434, No. 18-CV-398 (NGG) (CLP) (E.D.N.Y. Mar. 17, 2020) (agreeing "that there may be circumstances in which discovery to supplement the record may be necessary," but declining to permit "broad ranging discovery under Rule 26"); Jiahao Kuang v. U.S. Dep't of Def., No. 8-cv-03698-JST, 2019 WL 293379, at *2 (N.D. Cal. Jan. 23, 2019) ("[T]he welter of cases underlines the need for a flexible approach, tailored to the facts and claims of the case."); Bellion Spirits, 335 F. Supp. 3d at 43 ("Given the dearth of caselaw on point in this circuit, the Court declines to adopt any bright line or categorical rule."). Given the lack of controlling authority, this approach is sensible and appropriately focuses on the facts and claims of individual cases.

California v. U.S. Department of Homeland Security, 612 F.Supp.3d 875, 895–897 (N.D. Cal. 2020).  Many courts, however, have found that "discovery may be appropriate for a constitutional

claim involving agency action." *California v. United States Dep't of Homeland Security*, 612 F. Supp. 3d 875, 896 (NDCA 2020), *citing Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 2019 U.S. Dist. LEXIS 219262, 2019 WL 6970631, at *7 (D. Md. 2019) (collecting cases); *New York v. U.S. Dep't of Commerce*, 345 F. Supp. 3d 444, 451-52 (S.D.N.Y. 2018); *Grill v. Quinn*, No. 10-cv-0757 GEB GGH PS, 2013 U.S. Dist. LEXIS 85643, 2013 WL 3146803, at *6 n.8 (E.D. Cal. June 18, 2013).

## III.   ANALYSIS

In their motion, defendants concede that discovery outside the administrative record is permissible "when plaintiffs make a showing of agency bad faith." (ECF No. 140 at 4, citing *Lands Council*, 395 F.3d at 1030). However, defendants argue that Plaintiff have failed to make a "strong showing" of bad faith here.

In opposition, Plaintiffs argue that they are entitled to discovery related to "policies and practices that dictate the seemingly unmoored tactics taken by the Defendants in the course of this extensive litigation, including issuing and revoking and issuing a passport again once a United States citizen has departed the United States, and reopening some but not all of the N-600K applications, after delaying the same to age out two Plaintiffs." (ECF No. 142 at 8). Plaintiffs also point to a report by the Office of the Inspector General in 2018 regarding "Review of Allegations of Improper Passport Seizures at Embassy Sana'a, Yemen." (*Id.* at n. 1).

In support of their argument, Defendants rely on *Almaklani v. Trump*, 444 F. Supp. 3d 425 (E.D.N.Y March 2020) and *Ahmed v. Mayorkas,* No. CV 23-4807 PA (ASX), 2024 WL 5317160 (C.D. Cal. May 1, 2024).

In *Almaklani,* Plaintiffs alleged that each plaintiff filed a Form I-130 on behalf of family members and provided the necessary documentation. However, despite providing all necessary documents, the petitions were unreasonably delayed and defendants engaged in a scheme to "stymy and prevent Yemeni Muslim immigration to the United States." Plaintiffs allege a higher standard of proof was required to demonstrate family relation for individuals petitioning Yemeni nationals. Additionally, plaintiffs alleged that USCIS officers asked Yemeni petitioners to sign sworn statements seeking "irrelevant information about other relatives is required in an effort to "create a database of Yemeni families," and to "harass, delay, and deny other Yemeni I-130

petitions." Plaintiffs alleged claims under the APA, Fifth Amendment violations of substantive and procedural due process, violation of the Equal Protection Clause, and a violation of the First Amendment Establishment Clause.   *Almaklani*, 444 F. Supp. 3d at 427-429. The Court held that Plaintiffs in that case were not entitled to discovery outside the administrative record, stating:

> [T]o allow broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record. See Harvard Pilgrim Health Care of N.E. v. Thompson, 318 F. Supp. 2d at 10. In this case, although plaintiffs have brought their claims as a class action challenging the Yemeni Guidance under a variety of constitutional theories, the government has certified that the agency has produced the entire administrative record underlying the determination to adopt the Yemeni Guidance as an overall policy, and has not limited the record to the applications of one or more individual petitioners. Plaintiffs have also failed to make the requisite "strong" showing that the agency acted in bad faith, nor have they provided convincing evidence that the record is incomplete. In the absence of "clear evidence to the contrary," the Court finds that the administrative record has been properly designated and the addition of constitutional claims does not alter the sufficiency of the record.

*Id.* at 434.

In *Ahmed,* Plaintiff was a lawful permanent resident who filed I-130 petitions for his wife, son and daughter with USCIS. USCIS requested additional documentation because Plaintiff's submitted evidence was deemed insufficient and unreliable. The petitions were denied in June 2020, citing the unreliability of Yemeni documents. Following the denial, Plaintiff initiated DNA testing, however the U.S. embassy which was the location for the schedule DNA collection took more than 14 months to schedule the appointments, and Plaintiff had died unexpectedly prior to the appointments. The action alleged claims pursuant to the APA and constitutional violations of the Equal Protection Clause and Due Process Clause of the Fifth amendment. In support of the constitutional claims, Plaintiffs alleged that I-130 petitions filed by Yemeni Americans are not adjudicated under the same standards, procedures and practices as all other I-130 petitions. Following the review of the administrative record, Plaintiff sought permission to propound "35 exceedingly broad and burdensome requests for production of documents" *Ahmed,* No. CV 23-4807 PA (ASX) at 1-2).  The Court in *Ahmed* stated

> Plaintiffs have not justified the necessity of the discovery they seek to propound or sufficiently established that the administrative record submitted by the Government is not adequate to address both the APA and constitutional claims asserted in this action. Among other issues with Plaintiffs' proposed discovery is that the administrative record includes

information related to the Yemen Guidance adopted in 2012 and applied to the denial of Plaintiffs' I-130 Petitions. At most, Plaintiffs assert that the new guidelines adopted in 2021, after the denial of Plaintiffs' I-130 Petitions, suffer from the same discriminatory intent that motivated the 2012 policy that applied to Plaintiffs. Plaintiffs have not adequately supported their need for information about the more recent guidelines that have not been applied to them when they contend that the guidelines that did apply to them, and for which they have an adequate administrative record, were infected by discriminatory intent. Additionally, the delay Plaintiffs allegedly experienced in scheduling DNA testing, after USCIS had already denied their I-130 Petitions, does not justify the discovery Plaintiffs seek to propound.

*Id.* at 3.

On the other hand, Plaintiffs cite *Saget v. Trump,* 375 F.Supp.3d 280 (E.D.N.Y. 2019), which considered extra-record evidence in reviewing decision to terminate Temporary Protected Status (TPS) for Haiti based on allegations that bad faith or improper behavior infected Government's decision-making process. The *Saget* court explained its decision as follows:

Defendants argue "Plaintiffs have not established ... that the Administrative Record was formulated through 'bad faith or improper behavior' under the *Overton Park* standard." Def. Br. at 53 (quoting *Overton Park*, 401 U.S. at 416, 91 S.Ct. 814). But Plaintiffs need not establish Defendants formulated the record itself in bad faith or as the result of improper behavior. Rather, Plaintiffs must make a strong showing that bad faith or improper behavior infected the agency's decision-making process. *See Tummino v. Torti*, 603 F.Supp.2d 519, 544 (E.D.N.Y. 2009) (Korman, J.) (permitting review of extra-record evidence and finding bad faith because of "unreasonable delays, pressure emanating from the White House" and "significant departures" from past agency practices); *see also Nat'l Audubon Soc.*, 132 F.3d at 14, 16 (holding plaintiffs failed to make the required "strong showing" that the Forest Service acted pretextually in issuing a "finding of no significant impact"); *James Madison Ltd.*, 82 F.3d at 1096-97 (holding plaintiffs failed to make the required "strong showing" that the Office of the Comptroller of the Currency acted arbitrarily in establishing the loan loss allowance at issue); *Latecoere Int'l, Inc. v. U.S. Dep't of Navy*, 19 F.3d 1342, 1357 (11th Cir. 1994) (holding a plaintiff made a strong showing of bad faith in part because the plaintiff presented significant evidence the Navy's decision to award a contract to the plaintiff's competitor resulted from prejudicial violations of procurement regulations).

Here, Plaintiffs have not made mere "[n]aked assertions of bad faith." *See Hadwan v. U.S. Dep't of State*, 340 F.Supp.3d 351, 356 (S.D.N.Y. 2018) (Pauley, J.) (internal quotation marks, alterations and citations omitted). Rather, Plaintiffs have proffered significant evidence based on hard facts the Government's decision was pretextual, tending to show DHS, USCIS, and the Department of State reverse engineered the TPS process with the principal aim of "getting to no." For example, the evidence shows DHS officials pushed back on drafts "weighted for extension" because extension "was not the conclusion [they were] looking for." Pl. Ex. 127. DHS officials directed USCIS officials to "[b]e creative" in finding "positive data on the current status of Haiti to bolster the recommendation to terminate TPS." Pl. Ex. 86. Plaintiffs offer evidence that DHS and USCIS officials departed from prior practice by changing their interpretation of the TPS statute because the new interpretation would better

8

support termination. *See, e.g.*, Pl. Ex. 309 (describing "all of Haiti's challenges" as "long-standing, intractable problems" as opposed to "[i]ssues related specifically to the 2010 earthquake); Pl. Ex. 37 (noting "the conditions are what they are" but "[o]ur strongest argument for termination ... is just that it is not bad in a way clearly linked to the initial disasters prompting the designations"). . . . These documents are only a snapshot of what the parties have submitted to the Court suggesting the agencies undertook the TPS process in bad faith.

*Id.* at 343-44.

With this in mind, the Court has reviewed Plaintiffs' allegations of agency bad faith. Plaintiffs' Fourth Amended Complaint alleges the Defendants' conduct is "symptomatic of their pattern and practice of systematically delaying adjudication of immigration benefits filed by United States citizens and LPRs of Yemeni race and/or national origin…" (ECF No. 121 at ¶ 111). Specifically, the Fourth Amended Complaint alleges the following:

Petitioners have been subjected to a nationwide policy targeting Muslims and persons of color and specifically Yemeni nationals, in which petitions, applications are routinely held to a higher standard, eternally delayed and/or denied and when reopened after appeal or Mandamus relief are again delayed and denied on other grounds. (*Id.* at ¶15). . . .

Additionally Programs like Operation Janus and Second look seek to unlawfully readjudicate the US citizenship of persons from "countries of interest" specifically Muslim-majority countries long after evidence is no longer available. Many times this is done (as it was in this case, *See* Exhibit HH) using ATLAS, which has been widely criticized by Legal scholars and technologists, which they believe disproportionately flags certain communities, screening functionality are unknown and there is no way to identify and correct errors. (*Id.* at ¶18) (footnotes omitted). . . .

Despite the fact that Plaintiffs provided Muneera Abdallah's birth certificate as requested along with secondary evidence including sworn affidavits attesting to her date of birth, as detailed below, the interviews were not scheduled and instead Plaintiffs received denials of their N-600K applications based on a typographical error of the English translation only on a completely non-relevant document. (*Id.* at ¶56) . . .

USICS claimed that Muneera Abdallah did not fulfill the requirement within INA 322 where the children must reside outside the United States in the legal and physical custody of the U.S. citizen parent. However, this position by USCIS is without support. With the exception of *two* trips to the United States lasting 3 months and 25 days, on one trip, and 1 year and six months on another (trapped during COVID due to no available flights to Yemen) Muneera Abdallah has **resided in Yemen for 36 years / 95.2 percent of her life**, and **89 percent of her children's lives.** (*Id.* at ¶74) . . .

The Defendants declined to reopen the N-600Ks for Plaintiffs A.M.Q.A. and R.M.Q.A., because by that time they had aged out as a result of the Defendants' delays, revocations, and other bad faith actions. (*Id.* at ¶100) . . .

9

Pursuant to this policy, Defendant United States Citizenship and Immigration Services ("USCIS") routinely delays and denies N-600K Petitions filed by United States citizens of Yemeni race or national origin based on a heightened standard, only applied to N-600k applicants of Yemeni race or national origin, and which considers all Yemeni petitions to be "fraudulent until proven otherwise." See U.S. DOS Cable 09SANAA1729. (*Id.* at ¶135) . . .

This delay is accomplished by such tactics as: repeated failure to acknowledge or receive benefits applications or requests; relocating benefits requests to other agencies for purposes of compiling data and information to used in unrelated adjudications and investigations, requiring the taking of sworn statements for the purpose of collecting information to be used in unrelated investigations; issuance of duplicative Requests for Evidence and Notices of Intent to Deny requesting immaterial and unnecessary documents; failing to timely and promptly forward administrative appeals to the Board of Immigration Appeals (BIA); requiring DNA testing for US citizens multiple times even when DNA has proven the relationship over 99.99%; repeated adjudication of US citizenship years after evidence is gone or had previously been confiscated and destroyed by the US government for the approval of petitions without the necessary statutory and regulatory authority; systematically failing to request optional DNA after receipt of petitions, while precluding the unsolicited submission of DNA testing results by agency rules, failure to serve required notices, and even the routine "losing' of files at Defendants' various offices. (*Id.* at ¶139) . . .

On information and belief On information and belief, such practices and policies have existed for past several decades and have included the unlawful seizure and confiscation of the passports and citizenship documents of United States citizens' of Yemeni race and/or national origin at the now-closed United States Embassy in Sana'a; Department of State, Office of Inspector General (DOS-OIG), *Review of Allegations of Improper Passport Seizures at Embassy in Sana'a, Yemen*, OIG-ESP-19-01 (October 2018) (noting also that in some cases other documents including certificates of naturalization were confiscated); the adoption of specific procedures governing adjudication of petitions filed by Yemeni-Americans, which was based on speculative or deliberately misleading data and based on racist stereotypes that Defendants themselves were aware did not contribute to fair or efficient adjudication of Yemeni petitions (USCIS Policy Memorandum (PM-602-0064), *Supplemental Guidance for Adjudicating Family- Based Petitions Supported by Relationship Documents Actually or Purportedly Issued by a civil Authority in Yemen; Revision to the Adjudicator's Field Manual (AFM) Chapter 21);* relocating Yemeni immigration benefits to other agencies and sub-agencies for use in investigations unrelated to the adjudication of the specific immigration benefit; the creation and continued implementation of the "fraudulent until proven otherwise" standard; the use of interagency investigation to produce unreliable "fraud indicators" to justify further investigations to produce more unreliable "fraud indicators." (*Id.* at ¶141) . . .

Defendants' policies are part of an effort to "revoke" the citizenship of Yemeni-Americans through administrative process and often based on unreliable, insufficient evidence. See *Alzokari v. Pompeo*, 973 F.3d 65, 71, 72 n. 11 (2d Cir. 2020)(noting that purported confessions used to denaturalize and revoke the passports of Yemeni-American citizens; denying and delaying Consular Reports of Birth Abroad ("CRBA"), N-600/N-600k's for children of Yemeni-American citizens, as well as denying and delaying family based immigrant petitions for family members, were obtained by the Sana'a embassy staff in the course of fraud investigations were obtained under "dubious circumstances" and noting the

numerous claims of unlawful coercion made against Sana'a Embassy officials in similar circumstances).

(*Id.* at ¶142) . . .

The Court finds based on these allegations that Plaintiffs have adequately alleged bad faith to permit discovery outside the Administrative Record.  Thus, Defendants' motion for a protective order is denied insofar as it requests an order precluding all discovery outside the administrative record.

However, the Court agrees with Defendants that Plaintiffs' specific requests for discovery are premature.  Plaintiffs specifically request that the Court:

1. Direct Defendants to produce a privilege log for any and all redactions in the Certified Administrative Record and withheld materials associated with the administrative record, identifying the date, author, recipients, attorneys involved, privilege asserted, and a description sufficient to assess the basis for withholding;

2. Direct Defendants to produce the policy and decision making information documents including including any USCIS and DOS reports, recommendation memoranda or letters, Records of Clearance and Approval, routing or clearance materials, and drafts or redlines reflecting the decisionmaking process, related memoranda, email communications, and cables behind the practice of revoking Yemeni-American U.S. passports outside the United States and refusing to issue travel documents to return to the United States; or, at minimum, submit those documents to the Court for in camera review;

3. Direct Defendants to supplement the administrative record with omitted decisional materials directly or indirectly considered in connection with policy decisions that guided the Defendants' decisions to delay and deny N-600K applications from Yemeni nationals born to U.S. citizens; and

4. Grant leave, if necessary after production of the foregoing, for limited extra-record discovery directed to deliberative and other internal communications bearing on pretext, animus, omitted decisional materials, and unexplained deviation from standard practices, including allowing the Plaintiffs to seek no more than 3 depositions from Defendant officials with knowledge of the subject matter.

(ECF No. 142 at 10).

Here, the administrative record has yet to be produced.  It is possible the record will provide Plaintiffs with sufficient information regarding the polices that led to Defendant agencies' decisions throughout the process.  *See Tafas v. Dudas*, 530 F. Supp. 2d 786, 802 (E.D. Va. 2008) (noting that "wide-ranging discovery is not blindly authorized at a stage in which an

administrative record is being reviewed"). Indeed, cases that Plaintiffs rely on concern requests for discovery made after review of the certified record. For example, in *National TPS Alliance v. Noem,* the court allowed limited record discovery *after* production of the certified administrative record was found to have omitted documents that were considered by decision makers. *National TPS Alliance v. Noem*, No. 3:25-cv-01766-EMC, Dkt. 123 (N.D. Cal. Apr. 30, 2025). Defendants too cite multiple cases that permit discovery only *after the* administrative record was developed. *Immigrant Defs. L. Ctr.*, 2024 WL 2103964, at *9; *Tafas v. Dudas*, 530 F. Supp. 2d 786, 802 (E.D. Va. 2008) (noting that "wide-ranging discovery is not blindly authorized at a stage in which an administrative record is being reviewed"); *Grill*, No. VIC S-10-0757 GEB GGH PS, 2012 WL 174873, at *5 (E.D. Cal. Jan. 20, 2012) (ordering limited discovery where the administrative record appeared incomplete).

Moreover, the parties have not yet engaged in the discovery process, including serving requests for production, receiving objections, meeting and conferring, and engaging in an informal conference. Thus, the Court declines to authorize the specific discovery Plaintiffs have requested in their opposition brief, without prejudice to Plaintiffs seeking discovery after the administrative record has been produced and the parties have engaged in the discovery and meet and confer process.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, it is ORDERED as follows:

1. Defendants' motion for a protective order limiting discovery (ECF No. 142) be denied insofar as the Court will not limit discovery solely to the administrative record, to the extent Plaintiffs can show that additional discovery is warranted regarding their claims of bad faith; and

\\\

\\\

\\\

\\\

\\\

\\\

\\\

12

2. The parties are ordered to meet and confer after reviewing the administrative record regarding the scope of such discovery and follow the Court's procedures for resolving discovery disputes if the parties are unable to reach agreement.

IT IS SO ORDERED.

Dated:    **June 3, 2026**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE

13